From Frederic Ray, Harrisburg.

## Commonwealth ex rel. v. Harris

*A. Morris Ginsburg*, of *Ginsburg, Leven & Hollander*, for plaintiff.

MUSMANNO, J., June 6, 1936.—On June 4, 1928, petitioner in this case, James Harris, married Jennie Harris, respondent. At that time petitioner was still married to Rose Pope Tudick, although he asserts that he was of the impression this marriage had been dissolved by a divorce. The actual divorce did not become a reality until October 7, 1930. Jennie Harris, respondent, was unaware of the previous marriage of her husband, James Harris, but the latter testified that when the divorce from Ross Pope

Tudick was announced in the newspapers he explained the entire situation to Jennie Harris and that she rejoiced with him in his liberation and made the assertion that now there could be no doubt that they were husband and wife. Jennie Harris denied she made this declaration.

The parties lived with each other until January 1, 1936, when Jennie Harris left her husband, claiming that she had just now learned for the first time of the previous marriage to Rose Tudick. She asserts that her marriage on June 4, 1928, was illegal because of the undissolved marriage to Rose Tudick; that since they, James and Jennie Harris, had not remarried after the divorce untied James Harris from his previous marriage they were not husband and wife. In the meantime, that is to say, on January 29, 1933, a child was born to Jennie Harris and that child is the innocent party in this litigation. Regardless of what may happen to the parents, justice, humanity, and common decency demand that the child should not be made to suffer for the sins, if any, of the parents.

After much deliberation and reflection on all phases of this unfortunate situation, we are inclined to the conclusion that Mrs. Harris is permitting an understandable hurt to her amour propre and a resulting justifiable indignation to overcome her good judgment. If she persists in the attitude manifested at the trial she will visit an incalculable injury on the one she loves most and the one she desires least to offend, that is, her boy, Kenneth Harris. Her position, as advanced by her counsel at the habeas corpus proceeding, is that as her husband and she were not remarried after the divorce of October 1930, the child born to them in January 1933 is an illegitimate child.

Frankly put, if the contention of Mrs. Harris and her counsel is accepted by the court, it will result in Kenneth being branded by the world as a bastard. And at this point it would seem to be in order to say something about the shocking injustice and unfairness of affixing the of-

fensive term "bastard" to a child, who, without any will or desire on his part, is brought into the world through the meretricious relationship of his parents. If the word is to be used derogatorily, as it most frequently is, it would seem that the ones to whom it should apply should be the ones who are responsible, not the guiltless offspring. Thus the parents of a child born out of wedlock would become known as the bastard parents, and the victim would be known as the innocent child—not even the illegitimate child. Illegitimate? What crime has the child committed that he should be characterized illegitimate or illegal? Why should the bar sinister fall on him?

If humanity and a sense of fairness recoil at the application of the term "bastard" to even a child born of unmarried parents, with what greater reason must it shock our nature to have it apply to a child of individuals who honestly believed themselves married and were accepted as such by the community in which they lived? Up until October 7, 1930, James and Jennie Harris could not have married each other because James still had a wife living. But when Rose Tudick secured her divorce and James and Jennie Harris continued to live with each other they entered into a relationship known as common-law marriage. Although there is rather convincing evidence to the effect that Jennie did know of the divorce when it was granted, her knowledge or ignorance of it is of little consequence. The important thing is that she continued to live with James after October 1930, regarded him as her husband, was accepted everywhere as his wife, presumably loved him, and, most vital of all, bore him a child in 1933, three years after the first marriage of her husband had ceased to exist.

It may be that in retrospect respondent now dislikes her husband James for the deception practiced on her in 1928, but that does not enter into the legal and just appraisement of the status of their child before the world.

So there may be no question about our disposition of this case, we here assert as a pronouncement of law and

justice that James and Jennie Harris are man and wife and that Kenneth Harris is their legal child.

The husband and wife are not living together. The mother has the child. The father petitions the court for the privilege of seeing his son. That is a right which the court will gladly grant to him, and we accordingly enter the following

*Order*

And now, to wit, June 6, 1936, it is hereby ordered, adjudged, and decreed that Jennie Harris, respondent in this case, permit her husband, James Harris, to see their child, Kenneth Harris, periodically, and that for this purpose she shall deliver their child Kenneth at the Saniels home each Sunday afternoon so that James Harris may enjoy Kenneth's companionship from 2 to 6 p.m. each Sunday.